1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

THE POKÉMON COMPANY
INTERNATIONAL, INC.,

     Plaintiff,

v.

JON SAHAGIAN; DOES 1-5,

     Defendants.

No. 2:15-cv-00866 TSZ

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

**NOTE ON MOTION CALENDAR:
JUNE 26, 2015**

17

18

19

20

21

22

23

24

25

26

27

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

## TABLE OF CONTENTS

I.   INTRODUCTION.........................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................1

   A.  The Pokémon Trading Card Game. ................................................................1

     1.  The "Offline" Pokémon Trading Card Game. ........................................1

     2.  PTCGO—The "Online" Version Of The Pokémon Trading Card Game.................4

   B.  Sahagian's Infringing Uses Of TPCi's Copyrighted Pokémon Works..........................6

     1.  Background And Features Of The PokéBeach Site. ................................6

     2.  "TCG One," An Infringing Version Of TCG Online (PTCGO)...............................8

III. DISCUSSION .........................................................................................................11

   A.  The Preliminary Injunction Standard. ...........................................................11

   B.  Preliminary Injunctive Relief Is Appropriate To Restrain Defendant's Widespread
Infringement Of TPCi's Copyrighted Works And His Publication Of False CMI..........11

     1.  TPCi Provides Overwhelming Evidence Of Direct Copyright Infringement.............12

     2.  TPCi Also Establishes A Likelihood Of Proving Contributory Infringement...........13

     3.  Sahagian Admittedly Posted False Copyright Management Information. .................14

   C.  Absent Injunctive Relief, TPCi Is Likely To Suffer Irreparable Harm Because
Sahagian Would Continue To Operate An Infringing Version Of TPCi's PTCGO.........17

     1.  TCG One Causes Irreparable Harm Because of A Sub-Par User Experience...........17

     2.  The Suggestion of Affiliation Also Causes Irreparable Harm...................................17

     3.  It Will Be Difficult to Measure TPCi's Injuries. ....................................................18

     4.  Sahagian Will Be Unlikely To Compensate TPCi For Its Damages. .........................19

   D.  The Balance Of Equities Tips Decisively In TPCi's Favor. ...........................19

   E.  A Preliminary Injunction Would Serve The Public Interest. ..........................20

   F.  The Bond Should Be Minimal Absent A Showing Of Damages From The
Injunction ........................................................................................................21

IV.  CONCLUSION .......................................................................................................21

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

# TABLE OF AUTHORITIES

**Cases**

*Bach v. Forever Living Prods. U.S., Inc.,*
  473 F. Supp. 2d 1127 (W.D. Wash. 2007)................................................................ 12, 14

*Ballas v. Tedesco,*
  41 F. Supp. 2d 531 (D.N.J. 1999) .......................................................................... 21

*Cadence Design Sys. v. Avant! Corp.,*
  125 F.3d 824 (9th Cir. 1997) ................................................................................ 20

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,*
  321 F.3d 878 (9th Cir. 2003) ................................................................................ 21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991)............................................................................... 11, 13, 14

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
  76 F.3d 259 (9th Cir. 1996) ................................................................................. 14

*Funky Films, Inc. v. Time Warner Entm't Co.,*
  462 F.3d 1072 (9th Cir. 2006) ............................................................................... 11

*Gorbach v. Reno,*
  219 F.3d 1087 (9th Cir. 2000) ............................................................................... 21

*Harper & Row Publishers, Inc. v. Nation Enters.,*
  471 U.S. 539 (1985).......................................................................................... 19

*Jorgensen v. Cassiday,*
  320 F.3d 906 (9th Cir. 2003) ................................................................................ 21

*Lakedreams v. Taylor,*
  932 F.2d 1103 (5th Cir. 1991) ............................................................................... 20

*Logan Developers, Inc. v. Heritage Bldgs., Inc.,*
  No. 7:12-CV-323, 2013 U.S. Dist. LEXIS 140909 (E.D.N.C. Sept. 30, 2013)...................... 16

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,*
  658 F.3d 936 (9th Cir. 2011) ............................................................................ 13, 14

*Luvdarts, LLC v. AT&T Mobility, LLC,*
  710 F.3d 1068 (9th Cir. 2013) ............................................................................... 13

*MySpace, Inc. v. Wallace,*
  498 F. Supp. 2d 1293 (C.D. Cal. 2007) ................................................................ 17, 18

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,*
  944 F.2d 597 (9th Cir. 1991) ................................................................................ 18

*Rosen Entm't Sys. v. Vision,*
  343 F. Supp. 2d 908 (C.D. Cal. 2004) ...................................................................... 19

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

*Salinger v. Colting,*
   607 F.3d 68 (2d Cir 2010)..............................................................................18

*Shell Offshore, Inc. v. Greenpeace, Inc.,*
   709 F.3d 1281 (9th Cir. 2013) .......................................................................11

*United Fabrics Int'l, Inc. v. C&J Wear, Inc.,*
   630 F.3d 1255 (9th Cir. 2011) .......................................................................12

*Value Group, Inc. v. Mendham Lake Estates, L.P.,*
   800 F. Supp. 1228 (D.N.J. 1992) ..................................................................20

*Walczak v. EPL Prolong, Inc.,*
   198 F.3d 725 (9th Cir. 1999) .........................................................................21

*Ward v. Nat'l Geographic Soc'y,*
   208 F. Supp. 2d 429 (S.D.N.Y. 2002)...........................................................15

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)...........................................................................................11

*WPIX, Inc. v. ivi, Inc.,*
   691 F.3d 275 (2d Cir. 2012)...................................................................18, 19, 20, 21


**Statutes**

17 U.S.C. § 106 ....................................................................................................11
17 U.S.C. § 410 ....................................................................................................12
17 U.S.C. § 501 ....................................................................................................11
17 U.S.C. § 502 .................................................................................................1, 11
17 U.S.C. § 1202 ...................................................................................14, 15, 16
17 U.S.C. § 1203 ...............................................................................................1, 11


**Rules**

Fed. R. Civ. P. 65 ..............................................................................................1, 21

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

# I.  INTRODUCTION

Pursuant to 17 U.S.C. §§ 502(a) and 1203(b)(1), and Fed. R. Civ. P. 65(a), Plaintiff The Pokémon Company International, Inc. ("TPCi") seeks preliminary injunctive relief enjoining Defendant Jon Sahagian from continuing his blatant and willful infringements of TPCi's copyrighted works and his use of false copyright management information in connection with his infringing activities in violation of the Digital Millennium Copyright Act.

# II.  FACTUAL BACKGROUND

**A.   The Pokémon Trading Card Game.**

TPCi manufactures, markets, and distributes a variety of entertainment products, including movies, television shows, games, and toys throughout the United States and around the world. (Complaint ¶ 7; Declaration of David Schwimmer in Support of Plaintiff's Motion for Preliminary Injunction ("Schwimmer Decl.") ¶ 3.)

1.    The "Offline" Pokémon Trading Card Game.

One pillar of TPCi's business is the popular Pokémon trading card game ("the Pokémon TCG"), which was first introduced more than a decade ago. (Schwimmer Decl. ¶ 4.) In the Pokémon TCG, each player acts in the role of a "Trainer" and uses a number of different types of cards to play the game, including Pokémon cards, which represent particular characters known as "Pokémon." Players use his/her Pokémon to battle the Pokémon of other Trainers. Between games, players collect cards to assemble their optimal decks. (Complaint ¶ 8; Schwimmer Decl. ¶ 4.) Since the Pokémon TCG was introduced, TPCi has created and released thousands of trading cards, creating a rich and diverse Pokémon universe. (Complaint ¶ 10; Schwimmer Decl. ¶ 4.)

Each Pokémon trading card contains original artwork depicting a unique Pokémon character, that character's powers and abilities, a description of the character, and other data indicating the card's value. For example, following is a copy of a card depicting one version of the iconic Pokémon character Pikachu:

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   (Complaint ¶ 9; Schwimmer Decl. ¶ 5.)

16        TPCi owns exclusive rights under the Copyright Act for the artwork and characters that

17   TPCi has developed over thousands of trading cards for more than a decade (collectively, "the

18   Pokémon Works"). (Complaint ¶ 10; Declaration of Kim Warren in Support of Plaintiff's

19   Motion for Preliminary Injunction ("Warren Decl.") ¶ 4.) TPCi registers the Pokémon Works

20   with the United States Copyright Office and has obtained copyright registration certificates for

21   its registrations. (Complaint ¶ 10; Warren Decl. ¶ 4, 5.)

22        Pikachu, the most recognizable Pokémon within the Pokémon universe, has become

23   TPCi's principal mascot for the company and the Pokémon brand worldwide. (Complaint ¶ 18;

24   Schwimmer Decl. ¶ 6.) Pikachu appears on numerous cards in the Pokémon TCG, and is featured

25   in or around the branding for championship tournaments and other events TPCi organizes with

26   respect to the Pokémon TCG. (Complaint ¶ 18; Schwimmer Decl. ¶ 6.) Another example of the

27   many Pikachu Pokémon TCG cards is pictured below:

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  (Complaint ¶ 18; Schwimmer Decl. ¶ 6.)

17       Other Pokémon have generated strong followings from fans over the years from, in part,

18  frequent appearances in the Pokémon TCG. (Complaint ¶ 18; Schwimmer Decl. ¶ 7.) For

19  example, Charizard regularly appears in the Pokémon TCG and remains the card most coveted

20  by collectors. Charizard has also been featured in or around the branding for Pokémon TCG

21  championship tournaments and other TCG events. (Complaint ¶ 19; Schwimmer Decl. ¶ 7.)

22       Mewtwo is another of the most popular Pokémon. Mewtwo is also frequently featured in

23  the Pokémon TCG and in various Pokémon media and products. (Complaint ¶ 20; Schwimmer

24  Decl. ¶ 8.) Examples of a Charizard TCG card (left) and a Mewtwo TCG card (right) are

25  pictured below:

26
27

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14




15 (Complaint ¶¶ 19, 20; Schwimmer Decl. ¶¶ 7, 8.) Pikachu, Charizard, and Mewtwo are just three

16 of the more than 700 Pokémon which populate the diverse Pokémon universe that TPCi has

17 developed over more than a decade. (Complaint ¶ 21; Schwimmer Decl. ¶ 9.)

18        TPCi products, and specifically the Pokémon TCG expansion sets, are rolled out to

19 significant fanfare and marketed to millions of users in the United States and around the world.

20 For example, in 2014, TPCi invested more than $6 million in domestic advertising and

21 promotions associated with the Pokémon TCG. (Complaint ¶ 11; Schwimmer Decl. ¶ 10.)

22        2.   <u>PTCGO—The "Online" Version Of The Pokémon Trading Card Game</u>.

23        TPCi has also developed and released Pokémon TCG Online ("PTCGO"), an online

24 version of the Pokémon TCG made available through TPCi's website and mobile apps.

25 (Complaint ¶ 12; Declaration of Andrew Finch in Support of Plaintiff's Motion for Preliminary

26 Injunction ("Finch Decl.") ¶ 3.) Following is an image captured from the PTCGO:

27

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 4



(Complaint ¶ 12; Finch Decl. ¶ 3.)

To play PTCGO, users download software. PTCGO users can engage in some basic play for free as guests but typically register to create a TPCi account and purchase physical Pokémon TCG products from TPCi, including physical trading cards. (Complaint ¶ 13; Finch Decl. ¶ 4.) Registering to create a TPCi account enables a user to participate in daily challenges and tournaments and to obtain rewards. (Complaint ¶ 13; Finch Decl. ¶ 4.) Purchases of physical Pokémon TCG products allow players to obtain codes that they can use within PTCGO to acquire additional digital cards, decks, and customization items. (*Id.*) For example, if a player buys a "Booster Pack" containing additional physical Pokémon TCG cards, they will receive a code that unlocks the digital version of the "Booster Pack," which they can thereafter use while playing the PTCGO. Similarly, if a player purchases a pre-built 60-card theme deck of Pokémon TCG cards, they will receive a code which they can redeem for the digital version of that theme deck in the PTCGO. (Finch Decl. ¶ 4.)

As a result, PTCGO is a strong driver of sales of Pokémon merchandise and has become

focal PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1    a key part of the overall user experience and an integral part of the Pokémon TCG as a whole.

2    For example, in 2015, PTCGO has averaged more than 100,000 games started per day, and

3    through April 2015, more than 1.3 million codes were redeemed in connection with PTCGO

4    play. (Complaint ¶ 14; Finch Decl. ¶ 5.)

5    **B.    Sahagian's Infringing Uses Of TPCi's Copyrighted Pokémon Works.**

6              Defendant Jon Sahagian, using the online name "Water Pokémon Master," owns and

7    operates a website located at www.pokebeach.com ("the PokéBeach Site"), which is marketed as

8    the "Ultimate Pokémon Fansite." (Complaint ¶ 22; Declaration of Sean M. McChesney in

9    Support Plaintiff's Motion for Preliminary Injunction ("McChesney Decl.") ¶ 3, Exh. A at 1.)

10             1.    Background And Features Of The PokéBeach Site.

11             The PokéBeach Site is highly interactive. Users can register to create a PokéBeach

12   account and participate in a variety of Pokémon-related forums and chat rooms. (Complaint ¶ 23;

13   McChesney Decl. ¶ 4, Exh. B.) The PokéBeach Site also offers an "Article Program" which

14   features weekly articles by the Pokémon TCG's most accomplished players that analyz[e] the

15   current metagame and latest decks. (Complaint ¶ 24; McChesney Decl. ¶ 5, Exh. C.) Users can

16   also access "Premium articles" by paying for a weekly, monthly, or quarterly subscription. (*Id.*)

17             An entire section of the PokéBeach Site is devoted to the Pokémon TCG, including

18   categories for "TCG Resources," "PokéBeach's TCG Forums," and "TCG Sets & Card Scans."

19   (Complaint ¶ 26; McChesney Decl. ¶ 6, Exh. D.)

20             The "TCG Sets & Card Scans" category of the PokéBeach Site includes trading card

21   scans from TPCi's Pokémon TCG for "Standard Sets," "Expanded Sets," "Unlimited Sets," and

22   "Promos/Misc." (*Id.*) Recently, in announcing the features of the revamped PokéBeach Site that

23   debuted in May 2015, Sahagian boasted about the breadth of the Pokémon card scans feature:

24             The site now features a totally awesome card search that lets you look up any card
25             on the fly! You can also see information about the card, if the card is legal in
             Standard or Expanded, how many times it's been reprinted, links to what it was
26             reprinted from, any conditional notes for using the card, **links to buy the cards
             (which help support the site)**, and a couple of other features . . . .
27

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 6

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

. . . .

The listings [of card scans] contain every possible card you can use in your decks, even old cards that are still legal (such as Potion). You can also filter the cards in various ways, such as seeing all Water-type Pokémon, all Pokémon-EX, all Stadiums, and all old cards outside of the current range of Standard sets that are still legal. It's an invaluable resource to any player! Best part is that it updates whenever I add a new set all by itself, so there's much less manual labor involved than in 2005.

(McChesney Decl. ¶ 7, Exh. E at 7 (emphasis added).) The "TCG Sets & Card Scans" section of the PokéBeach Site contains scans of all or nearly all of TPCi's Pokémon TCG cards that TPCi has created over more than a decade. (Complaint ¶ 26; Schwimmer Decl. ¶ 11.)

Clicking on any of the cards in the "TCG Sets & Card Scans" category on the PokéBeach Site displays a larger scanned image of the card on which a "PokéBeach.com" watermark has been superimposed in the right bottom corner of the character image on the card. (Complaint ¶ 30; *see also infra* at 15:10-16:11.) Following is an image of a scanned Pikachu trading card available on the PokéBeach Site:



**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1    (Complaint ¶ 30; McChesney Decl. ¶ 9, Exh. G.)

2        The informational box appearing to the right of the scanned image of the trading card

3    allows the user to view all of the cards for Pikachu. (Complaint ¶ 31.) It also offers a "Print

4    proxy" option, which is described as a "perfectly sized scan for printing the card out at its real

5    size.  Handy for testing the card in a real deck." (Complaint ¶ 31.) The box also includes links to

6    third-party retailers of Pokémon merchandise, which Sahagian admits generates revenue for and

7    "help[s] support" the PokéBeach Site. (Complaint ¶ 32; *supra* 6:23.) Numerous other links to

8    third-party retailers also appear elsewhere on the PokéBeach Site. (Complaint ¶ 32.)

9        The PokéBeach Site staff even includes a dedicated "Card Scanner" as well as three

10   "Scan Editors," including "Water Pokémon Master" (aka Sahagian). (Complaint ¶ 29;

11   McChesney Decl. ¶ 3, Exh. A at 4.) In touting the "new" PokéBeach Site unveiled in May

12   2015—which included a number of features that specifically exploited TPCi's intellectual

13   property—Sahagian emphasized the greatly improved quality of the card scans on the site:

14       All of the scan pages have totally been redone to show card thumbnails, which
         you can then open to see information about the card.
15       . . . .

16       Shakespeare, our card scanner since the early 2000s, has also rescanned his entire
         collection using Dolby THX HD 5.1 SSD Hokie Pokéy technology. The scans are
17       even higher quality than before! We are still editing most of the scans, but the
         most recent sets are using the newer images. Sets using the older scans have all
18       been reprocessed to be larger than before.

19

20   (Complaint ¶ 29; McChesney Decl. ¶ 7, Exh. E at 7.)

21       2.   "TCG One," An Infringing Version Of TCG Online (PTCGO).

22       The PokéBeach Site also includes a "Activities" section that offers access to "PokéBeach

23   Tournaments & Activities" and to "Pokémon Showdown," a "Pokémon battle simulator that lets

24   you build Pokémon teams and battle other players." (Complaint ¶ 25; McChesney Decl. ¶ 10,

25   Exh. H.)

26       The "Activities" section of the PokéBeach Site also offers users access to "TCG One," a

27   "powerful TCG simulator that lets you build decks, battle others, and so much more!"

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 8

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

(Complaint ¶¶ 35, 36.) The PokéBeach Site boasts that TCG One, which Sahagian announced in May 2015, is "[h]osted exclusively by PokéBeach" and was created by "Axpendix," who is identified as a member of the "Notable PokéBeach Staff." (Complaint ¶ 35; McChesney Decl. ¶ 3, Exh. A at 3, ¶ 7, Exh. E at 3, 4.)

According to the PokéBeach Site's "TCG One Guide," TCG One is:

[b]ursting at the seam with features, you can build decks out of all available cards, use pre-existing decks built by other members, chat with players, and even play in a "Career" mode where you start with a basic deck and earn cards as you win matches. The simulator is a great way to practice for real tournaments and is especially helpful for players who want to learn how to play the TCG! The program even has old cards programmed into it, meaning you can play with all your classic favorites . . . and under the formats and rules of their time!

(Complaint ¶ 36; McChesney Decl. ¶ 8, Exh. F at 1.)

As can be seen in the following image from the PokéBeach Site's "TCG One Guide," TCG One features full-color scanned images of TPCi's Pokémon TCG trading cards, at least some of which appear to again have the "PokéBeach.com" watermark superimposed on them:



(Complaint ¶ 39; McChesney Decl. ¶ 8, Exh. F at 2.)

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 9

1        Pictured below are two images from within TCG One depicting reproductions of TPCi's

2    Pokémon TCG cards referenced above (*see supra* at 3:10, 4:5):





27    (Complaint ¶ 40; McChesney Decl. ¶ 11, Exh. I.)

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 10

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

The PokéBeach Site's "TCG One Guide" also equates the TCG One game with the official PTCGO, noting that users can use Pokémon's "official simulator, 'Pokémon Trading Card Game Online.'" (Complaint ¶ 37; McChesney Decl. ¶ 8, Exh. F at 1.) And, self-described TCG One creator "Axpendix," in describing the features of TCG One — including "[r]eal and big card images" and a long list of currently available card sets — boasted that "[i]t means you can select any card in these sets and play like ptcgo!" (Complaint ¶ 38; McChesney Decl. ¶ 12, Exh. J at 1, 2.)

## III.  DISCUSSION

### A.    The Preliminary Injunction Standard.

Under Section 502(a) of the Copyright Act, a Court is authorized to grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Section 1203(b)(1) of the Digital Millennium Copyright Act ("DMCA") similarly authorizes preliminary injunctive relief "to prevent or restrain a violation" of, as relevant here, Section 1202 of the DMCA. 17 U.S.C. § 1203(b)(1).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013).

### B.    Preliminary Injunctive Relief Is Appropriate To Restrain Defendant's Widespread Infringement Of TPCi's Copyrighted Works And His Publication Of False CMI.

Anyone who violates any of the copyright owner's exclusive rights under the Copyright Act—including the right to reproduce and distribute the copyrighted works and to prepare derivative works from those works—is an infringer of the copyright in the works at issue. 17 U.S.C. §§ 106(1)-(3), 501(a). There are two essential elements of a copyright infringement claim:  (1) ownership of a valid copyright; and (2) copying of constituent original elements of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Funky Films, Inc. v.*

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

1  *Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006).

2      That TPCi owns valid copyrights in the Pokémon Works, including the Pokémon TCG

3  trading cards, is beyond dispute. And the Pokémon Works are indisputably original works of

4  authorship possessing far more than the "minimal degree of creativity" required for copyright

5  protection. *Feist*, 499 U.S. at 345. Additionally, TPCi has provided representative certificates of

6  copyright registration as well as a listing of other relevant registrations, (Complaint ¶ 10, Exh. A;

7  Warren Decl. ¶ 4, Exhs. A, B; ¶ 5, Ex. C), which "constitute prima facie evidence of the validity

8  of the copyright and of the facts stated in the certificate[s]," including TPCi's ownership of valid

9  copyrights. 17 U.S.C. § 410(c); *see also United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d

10  1255, 1257-58 (9th Cir. 2011); *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1127,

11  1133 (W.D. Wash. 2007).

12      Thus, the key question is whether TPCi can demonstrate a likelihood of showing direct

13  and contributory infringement, as well as publication of false copyright management

14  information. As set forth below, it clearly does.

15      1.    <u>TPCi Provides Overwhelming Evidence Of Direct Copyright Infringement</u>.

16      The evidence of Sahagian's direct copying of the Pokémon Works in their entirety is

17  overwhelming. Even a cursory review of Sahagian's PokéBeach Site reveals thousands of full-

18  color scans of TPCi's Pokémon TCG cards. (*See, e.g.*, Schwimmer Decl. ¶ 11.) The PokéBeach

19  Site even has a dedicated "Card Scanner" staff member, as well as three "Scan Editors,"

20  including Sahagian. (Complaint ¶ 29; McChesney Decl. ¶ 3, Exh. A at 4.)

21      Moreover, Sahagian makes repeated admissions of direct copying of TPCi's Pokémon

22  TCG cards on his PokéBeach Site. For example, in touting the features of the revamped

23  PokéBeach Site in May 2015, Sahagian boasted that "[a]ll of the scan pages have totally been

24  redone" and that "the scans are even higher quality than before!" (Complaint ¶ 29; McChesney

25  Decl. ¶ 7, Exh. E at 7.) He also markets the Pokémon TCG card scans section of the PokéBeach

26  Site as "an invaluable resource to any player," explaining that the lists of card scans "contain

27  every possible card you can use in your decks, even old cards that are still legal[.]" (*Id.*)

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 12

With respect to the TCG One game, Sahagian's PokéBeach Site is the "exclusive host" to TCG One, which is "fully integrated" into the site. (McChesney Decl. ¶ 3, Exh. E at 3, 4.) TCG One was created by a member of the "Notable PokéBeach Staff" and Sahagian admits to working with the creator to "figur[e] out ways [they could] make the TCG even more fun and exciting for fans." McChesney Decl. ¶ 3, Exh. E at 8.) Further, the TCG One utilizes scans of Pokémon TCG cards, all or nearly all of which bear Sahagian's "PokéBeach.com" watermark, demonstrating that his infringing scans of TPCi's Pokémon trading cards form an integral part of the infringing TCG One game. (McChesney Decl. ¶ 11, Exh. I; *see also* Complaint ¶ 40.) Sahagian's PokéBeach Site boasts that TCG One is a "simulator" and a "way to practice" for Pokémon TCG tournaments—in other words, Sahagian all but admits that TCG One is an unauthorized version of the PTCGO.

2.     TPCi Also Establishes A Likelihood Of Proving Contributory Infringement.

TPCi similarly establishes a high likelihood of succeeding on its claim for contributory copyright infringement. A defendant is liable for contributory copyright infringement if he "(1) knew of the direct infringement; and (2) either induced, caused, or materially contributed to the infringing conduct." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). "Material contribution turns on whether the activity in question 'substantially assists' direct infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011).

There can be no dispute that Sahagian knew of the direct infringement of TPCi's copyrighted Pokémon Works. He is the admitted owner and operator of the PokéBeach Site, which contains a section devoted to scanned images of all, or nearly all, of TPCi's Pokémon trading cards. (Schwimmer Decl. ¶ 11; *see also* Complaint ¶ 26.) And, as described above (*see supra* at 12:20-26), he has marketed his PokéBeach Site in large part on the scope and quality of the Pokémon card scan feature.

With respect to the TCG One game, Sahagian advertises that his PokéBeach Site is the "exclusive host" to the game and that it is "fully integrated" into the site. (McChesney Decl. Exh.

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

E at 3; *see also* Complaint ¶ 35.) The Ninth Circuit has stated unequivocally that "[t]here is no question that providing direct infringers with server space satisfies that [substantially assists] standard." *Louis Vuitton*, 658 F.3d at 943; *see also Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (stating that a secondary infringer can materially contribute to infringing activity by "providing the site and facilities for known infringing activity"). Thus, this fact alone establishes that there is "no question" that Sahagian materially contributed to the direct infringement of TPCi's copyrighted Pokémon Works with respect to the TCG One game. *Louis Vuitton*, 658 F.3d at 943-44 (stating that the servers were "an essential step in the infringement process") (internal quotation marks omitted).

Sahagian also admits to a significant role in the development of TCG One, which was created by "Axpendix," a member of the "Notable PokéBeach Staff." (McChesney Decl. Exh. A at 3; *see also* Complaint ¶ 35.) For example, Sahagian stated that "it's always been a blast talking to [the creator of TCG One] about his program and figuring out ways we can make the TCG even more fun and exciting for fans." (McChesney Decl. Exh. E at 8.) Moreover, it appears that most, if not all, of the Pokémon TCG card images in TCG One bear the "PokéBeach.com" watermark, suggesting that Sahagian provided the Pokéman TCG card scans from his website for use in the TCG One game.

Therefore, as demonstrated above, TPCi has established a high likelihood of succeeding on the merits of both its direct and contributory copyright infringement claims against Sahagian.

3.    Sahagian Admittedly Posted False Copyright Management Information.

Section 1202(a) of the DMCA states that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement . . . provide copyright management information that is false[.]" 17 U.S.C. § 1202(a)(1). "Copyright management information" ("CMI") is defined to include, in part, the following types of information when conveyed in connection with copies or displays of a work, including in digital form: "(1) The title and other information identifying the work, including the information set forth on a notice of copyright"; "(2) The name of, and other identifying information about, the author of a work"; and "(3) The

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(1)-(3).

Thus, there are two prerequisites for establishing a violation of Section 1202 of the DMCA: "(1) the person providing, distributing or importing the false [CMI] must know the [CMI] is false, and (2) the person providing, distributing, or importing the false [CMI must] do so with the intent to induce, enable, facilitate or conceal an infringement of any right under title 17." *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002) (internal quotation marks omitted). The currently available facts demonstrate that TPCi is likely to succeed on the merits of its DMCA claim against Sahagian.

First, the scanned Pokémon trading cards appearing on Sahagian's PokéBeach Site clearly bear a "PokéBeach.com" watermark that has been superimposed on the images. An example of this alteration of TPCi's Pokémon TCG cards is illustrated below:




(Complaint ¶ 33; McChesney Decl. ¶ 9, Exh. G.)

Sahagian's use of the "PokéBeach.com" watermark in this manner is the functional equivalent of a notice of copyright authorship and/or ownership, thereby falling within one or all

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 15

three definitions of CMI set forth above. *See* 17 U.S.C. § 1202(c)(1)-(3).

Second, Sahagian cannot claim to be ignorant of the falsity of the "PokéBeach.com" CMI superimposed on his scans of TPCi's Pokémon trading cards. On his PokéBeach Site, Sahagian describes himself as a committed Pokémon fan since childhood, and claims to have participated in TCG tournaments and worked at several "Pokémon websites" in the late 1990s and early 2000s. (McChesney Decl. ¶ 3, Exh. A at 1.) And according to Sahagian, he debuted his PokéBeach Site to the public nearly 12 years ago in July 2003. (*Id.*) Moreover, his "PokéBeach.com" watermark was placed on images of TPCi's Pokémon trading cards that were scanned by him and/or at his direction. Based on this history, there can be no dispute that Sahagian knew that the CMI (the "PokéBeach.com" watermark) superimposed onto the scanned images of TPCi's Pokémon TCG cards was false.

Third, the facts establish that Sahagian placed the false CMI on his scans of TPCi's Pokémon trading cards with the intent to, at least, enable, facilitate, or conceal the infringement of TPCi's copyrighted Pokémon Works. As described at some length above (*see supra* at 6:11-8:19), Sahagian's PokéBeach Site includes, as a central feature of the site, hundreds if not thousands of scans of TPCi's Pokémon TCG cards. The scanned Pokémon TCG card images were modified to include the "PokéBeach.com" watermark. The "obvious implication" of these facts is that Sahagian used his "PokéBeach.com" watermark with the intent to facilitate and/or conceal his widespread infringement by suggesting that his site was the author or owner of the copyrights in the scanned images, or an authorized licensee. *See Logan Developers, Inc. v. Heritage Bldgs., Inc.*, Case No. 7:12-CV-323, 2013 U.S. Dist. LEXIS 140909, *24-25 (E.D.N.C. Sept. 30, 2013) (where home designer and builder placed its name on infringing house designs and advertised the designs on the Internet, court concluded that the "obvious implication" was that builder did so "with the intent to conceal its infringement").

Consequently, TPCi has also established a likelihood of succeeding on the merits of its DMCA claim based on Sahagian's publication of false CMI on his scans of TPCi's copyrighted Pokémon Works.

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

**C.      Absent Injunctive Relief, TPCi Is Likely To Suffer Irreparable Harm Because Sahagian Would Continue To Operate An Infringing Version Of TPCi's PTCGO.**

Absent a preliminary injunction, TPCi is likely to suffer irreparable harm that is difficult to quantify and therefore not appropriately remedied by monetary damages. Courts have found irreparable harm in a variety of situations, such as due to loss of customer goodwill, an improper suggestion of affiliation, the difficulty of measuring damages and a defendant's expected inability to pay. Here, each of these factors offer independent bases for concluding that TPCi will be irreparably harmed.

1.      TCG One Causes Irreparable Harm Because Of A Sub-Par User Experience.

With respect to the PokéBeach Site's TCG One game, because it is an unauthorized, infringing facsimile of TPCi's PTCGO, TCG One does not encourage or enable players to purchase physical Pokémon merchandise in order to acquire additional digital cards, decks, and customization items, which is a key aspect of TPCi's PTCGO and integral part of the user experience. TCG One thus results in a sub-par Pokémon online trading card game experience. (Finch Decl. ¶ 7; *see also* Complaint ¶ 37.) Moreover, by siphoning away Pokémon online trading card game players, the infringing TCG One game divests TPCi of the ability to monitor, support, control and make improvements to the quality of the players' online Pokémon TCG experience. (Finch Decl. ¶ 8.) Unlike PTCGO, TCG One is not subject to the same policies TPCi has in place to main a positive gaming environment, and this is another way in which the user experience will be sub-par. (Finch Decl. ¶ 9.) This type of reputational harm to TPCi resulting from disgruntled players dissatisfied by their experience as a result of their use of the infringing TCG One game is difficult to measure or remedy with monetary damages. *See MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.").

2.      The Suggestion Of Affiliation Also Causes Irreparable Harm.

The same is true for the loss of goodwill TPCi is likely to suffer from Pokémon fans who believe that TPCi has licensed the hundreds of scans of TPCi's Pokémon trading cards on

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

Sahagian's PokéBeach Site, a belief that is all too likely given his use of the "PokéBeach.com" watermark on the scans. *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) (stating that "[h]arm may be irreparable where the loss is difficult to replace or measure"), *cert. denied*, *ivi, Inc. v. WPIX, Inc.*, 133 S. Ct. 1585 (2013); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (stating that "intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm"). Over the years, TPCi has developed a worldwide network of licensees that support and protect the quality of the rich Pokémon universe, including in connection with the Pokémon TCG. (Finch Decl. ¶ 10.) By suggesting an affiliation that does not exist, Sahagian's PokéBeach Site and its TCG One game interfere with that network, threatening both TPCi's reputation and the quality of users' experience. *See MySpace*, 498 F. Supp. 2d at 1305-06 (finding, in case alleging violation of CAN-SPAM Act, that defendant's "misleading suggestions that he is affiliated with Plaintiff impacts the quality of MySpace.com users' experiences with Plaintiff's services").

### 3. It Will Be Difficult To Measure TPCI's Injuries.

Moreover, a preliminary injunction is warranted because it would be difficult, if not impossible, to determine the damages and lost profits that TPCi would sustain if Sahagian was allowed to continue his infringement. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (upholding district court's finding that damages would be "difficult to valuate and thus constituted possible irreparable harm"); *Salinger v. Colting*, 607 F.3d 68, 81 (2nd Cir. 2010) ("Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. . . . [a]nd courts have tended to issue injunctions in this context because 'to prove the loss of sales due to infringement is . . . notoriously difficult.'") TPCi has acted promptly to protect its intellectual property, filing suit and seeking preliminary injunctive relief shortly after Sahagian announced the launch of the "new" PokéBeach Site in May 2015, including a new, more comprehensive card scans feature and the full integration of the completed TCG One game. (McChesney Decl. Exh. E at 4, 7; Finch Decl. ¶ 6.) Because

TPCi acted promptly, it would be extraordinarily difficult, if not impossible, to measure the harm TPCi will suffer if Sahagian is allowed to continue his widespread infringement of TPCi's copyrighted Pokémon Works while this matter is fully adjudicated, and users chose to play the infringing TCG One instead of PTCGO. That is a loss that TPCi "should not be expected to suffer." *WPIX*, 691 F.3d at 285-6.

        4.   <u>Sahagian Will Be Unlikely To Compensate TPCi For Its Damages</u>.

Finally, a defendant's inability to compensate a plaintiff for the damages it has inflicted is another factor in determining whether a preliminary injunction should be issued. *See WPIX*, 691 F.3d at 285-6 ("The unlikelihood that defendant[] . . . would . . . be able to satisfy a substantial damage award further supports a finding of irreparable harm.") (internal quotation marks omitted); *Rosen Entm't Sys. v. Vision*, 343 F. Supp. 2d 908, 920 (C.D. Cal. 2004) (same). If TPCi prevails, it would be entitled to recover a significant statutory damages award. It is unlikely that Sahagian will be able to satisfy a substantial damages award. This is yet another reason why there is irreparable harm.

**D.    The Balance Of Equities Tips Decisively In TPCi's Favor.**

"The rights conferred by copyright are designed to assure contributors to the store of knowledge a fair return for their labors." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985). Here, TPCi has spent extraordinary time, effort, and resources developing and populating the rich Pokémon universe, including thousands of TCG cards for its Pokémon TCG. Through its efforts, TPCi has cultivated a devoted fan base which continues to expand as TPCi introduces and integrates new elements to the Pokémon universe and experience, including the PTCGO.

Sahagian, on the other hand, has brazenly scanned hundreds if not thousands of TPCi's Pokémon trading cards, superimposed his "PokéBeach.com" watermark on the scans of TPCi's cards, and been instrumental in developing, facilitating, and marketing a cheap knock-off of TPCi's PTCGO. He then incorporated these infringing copies of TPCi's copyrighted Pokémon Works on a website that includes links to third-party retailers, which links generate revenue for

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 19

his website. (McChesney Decl. Exh. E at 7; *see also* Complaint ¶ 28.) Although disguised as the "Ultimate Pokémon Fansite," (Complaint ¶¶ 28, 32), Sahagian's PokéBeach Site is in reality merely a vehicle for his widespread infringement of TPCi's copyrighted Pokémon Works. Sahagian's only interest, therefore, is to continue his infringing activities.

Considering all of the above, the balance of equities tips entirely in TPCi's favor. TPCi has demonstrated a high likelihood of succeeding on the merits of its copyright infringement and DMCA claims. TPCi has also established that it is likely to suffer irreparable harm because, absent an injunction, Sahagian will be permitted to continue his willful and widespread infringement of TPCi's copyrighted Pokémon Works. *See WPIX*, 691 F.3d at 287 (concluding that balance of hardships weighed heavily in favor of a preliminary injunction where "plaintiffs established both a likelihood of success on the merits and irreparable harm—the absence of an injunction would result in the continued infringement of their property interests in the copyrighted material"); *Cadence Design Sys. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) ("[T]he balance of hardships issue cannot be accorded significant — if any — weight in determining whether a  court should enter a preliminary injunction to prevent the use of infringing material in cases where . . . the plaintiff has made a strong showing of likely success on the merits."). In light of these circumstances, a defendant like Sahagian "who knowingly infringes another's copyright cannot complain of the harm that will befall [him] when properly forced to desist from [his] infringing activities." *Cadence Design*, 125 F.3d at 829 (internal quotation marks omitted).

**E.      A Preliminary Injunction Would Serve The Public Interest.**

The public's interest "in preserving rights provided by the federal copyright law" has been recognized as an interest supporting the grant of preliminary injunctive relief. *Lakedreams v. Taylor*, 932 F.2d 1103, 1110 (5th Cir. 1991); *see also Value Group, Inc. v. Mendham Lake Estates, L.P.*, 800 F. Supp. 1228, 1234 (D.N.J. 1992) ("The public interest will be served by upholding the copyright protection, and preventing the pirating of creative energies and resources that are invested in protected works."). "Inadequate protections for copyright owners

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

can threaten the very store of knowledge to be accessed; encouraging the production of creative work thus ultimately serves the public's interest in promoting the accessibility of such works." *WPIX*, 691 F.3d at 287. Additionally, courts have recognized "a substantial public interest in avoiding customer confusion" in the copyright infringement context. *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 542 (D.N.J. 1999).

Given the reputational harm and loss of goodwill threats discussed above with respect to the issue of irreparable harm, the public interest is served by preliminarily enjoining Defendant's willful and widespread infringements of TPCi's copyrighted Pokémon Works.

**F.    The Bond Should Be Minimal Absent A Showing Of Damages From The Injunction.**

Rule 65(c) requires the Court to set bond before issuing preliminary relief. FED. R. CIV. P. 65(c). The Court has wide discretion in determining "the amount of security required, *if any*." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks omitted); *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999). The bond may be set at zero where there is no evidence that a party will suffer damages from the issuance of an injunction. *See Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000). To support a request for a bond, the requesting party must submit evidence regarding likely damages. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882-83 (9th Cir. 2003) (refusing to address a bond-related question on appeal where the district court was not presented with the bond issue).

Here, the injunction seeks to prevent Sahagian from using TPCi's copyrighted Pokémon Works. While Sahagian is improperly monetizing his infringements of TPCi's copyrighted works, he is not charging to access TCG One. Thus, he cannot argue that he would suffer substantial damages if the injunction were for some reason wrongly issued. As a result, TPCi requests that the Court set the bond at zero.

## IV.   CONCLUSION

Preliminary injunctive relief is eminently appropriate in light of the facts of this case. As described herein, Sahagian's infringement of TPCi's copyrighted Pokémon Works has been willful and widespread. And Sahagian has attempted to conceal his infringement by

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966

superimposing his "PokéBeach.com" watermark on his infringing trading card scans, suggesting an authorization to use TPCi's intellectual property that did not, and does not, exist. That the harm TPCi is likely to suffer from Sahagian's actions is difficult to measure does not make it illusory, nor does it justify allowing him to continue his infringing conduct. TPCi therefore respectfully requests that the Court enter an order enjoining and restraining Defendant, and all persons or entities acting in concert with him, during the pendency of this action and thereafter perpetually from (a) copying, creating derivative works from, distributing copies of, and/or publicly displaying the Pokémon Works, (b) operating, hosting, or otherwise making available to the public the TCG One game, and (c) providing and distributing false copyright management information, as set forth in the Proposed Order submitted herewith.

DATED: June 2, 2015                               Respectfully Submitted,

                                                  FOCAL PLLC

                                                  By: *s/ Venkat Balasubramani*
                                                  _____
                                                  Venkat Balasubramani, WSBA #28269
                                                  *s/ Sean M. McChesney*
                                                  _____
                                                  Sean M. McChesney, WSBA #36973
                                                  800 Fifth Avenue, Suite 4100
                                                  Seattle, WA 98136
                                                  Tel: (206) 529-4827
                                                  Fax: (206) 260-3966
                                                  venkat@focallaw.com
                                                  sean@focallaw.com

                                                  Attorneys for Plaintiff,
                                                  THE POKÉMON COMPANY
                                                  INTERNATIONAL, INC.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 22

**focal** PLLC
800 Fifth Ave., Ste. 4100
Seattle, WA 98104
206.260.3966